**ORDERED.**

**Dated:  June 30, 2023**

Jason A. Burgess
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

NILHAN FINANCIAL, LLC,

Case No. 8:17-bk-03597-BAJ
Chapter 7

                  Debtor.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## SUSTAINING AMENDED OBJECTION TO CLAIM THREE (3)

This Case came before the Court for a two-day trial that began on February 8, 2023, on the Second Amended Objection to Claim 3 of SEG Gateway, LLC (the "Claimant")[1] (Doc. 721), filed by Niloy Thakkar ("N. Thakkar") and the joinder to the Claim Objection (Doc. 733), filed by interested party, Chittranjan Thakkar ("C. Thakkar") (collectively, the "Thakkar Parties").  Claim 3 asserts liability based on the theory of reverse veil-piercing, in connection with a debt owed by C. Thakkar.[2]  If the Claimant prevails, it will receive 50% of the sole remaining asset in the Debtor's estate, a $2,344,392.88 distribution paid to the Debtor from a

---

[1] References to SEG Gateway, LLC, include its successors-in-interest.

[2] Claim 3 is supported by judgments entered in favor of Good Gateway, LLC ("Good Gateway") and SEG Gateway, LLC ("SEG Gateway") against various parties including C. Thakkar.

Chapter 11 bankruptcy case in Georgia.  At the conclusion of the trial, the Court took the matter under advisement and directed the parties to submit post-trial briefs.  (Docs. 936, 937, 939).

For over six years, this Case has been pending before the Court.[3]  From the inception of the Case, a substantial amount of litigation has occurred, and the present issue will hopefully bring closure to this portion of the saga that has unfolded.  While a myriad of issues have been raised, the first key issue is whether Georgia or Florida law applies to the reverse veil-piercing claim.  The Court finds that Florida law applies.  For the reasons set forth below, although the Court finds that the Debtor is a Florida limited liability company, to which Florida law and the "Familial Exception" could apply, the weight of evidence is not sufficient to meet the *extremely* stringent standard applicable to reverse veil-piercing.

## <u>Findings of Fact</u>

On March 21, 2017, an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code was filed against the Debtor.[4]  The Case was filed in the United States Bankruptcy Court for the Southern District of Florida and subsequently transferred to the United States Bankruptcy Court for the Middle District of Florida.  (Docs. 19, 20).[5]

The Debtor is a limited liability company, which was controlled and managed by C. Thakkar.  As of the petition date, the Debtor's sole members were N. Thakkar and Rohan Thakkar ("R. Thakkar").[6]  The Florida Department of State, Division of Corporations, listed

---

[3] On November 8, 2022, the Case was reassigned to me.  Previously, the Case was assigned to the Honorable Michael G. Williamson, who served the Middle District of Florida Bankruptcy Court with great distinction for over two decades until he passed away on November 3, 2022.

[4] The involuntary petition was filed by Moffa & Breuer, PLLC, who claimed on the petition that it was owed attorney's fees from the Debtor in the amount of $328,301.91.  (Doc. 1).

[5] On July 10, 2017, the Debtor consented to the Amended Voluntary Petition and requested that the case be converted to a case under Chapter 11 of the United States Bankruptcy Code.  The Court granted the request, and an Order Converting Case from Chapter 7 to Chapter 11 was entered.  (Doc. 62).  On December 15, 2017, the case was reconverted to Chapter 7.  (Doc. 155).

[6] C. Thakkar is the father of N. Thakkar and R. Thakkar.

the Debtor as a "Florida Limited Liability Company" as of December 17, 2009. (Cl.'s Ex. 49). The Debtor and the Thakkar Parties have repeatedly referred to the Debtor as a Florida limited liability company. Further, the Debtor states in its Answer to the Involuntary Petition that its "only significant asset is a promissory note secured by a mortgage on real property owned by Orlando Gateway Partners, LLC," that is located in Florida. (Cl.'s Exs. 50-56).

On September 26, 2017, the Claimant filed Proof of Claim 3 in the amount of $13,972,435.58. A few weeks later, the Claimant filed an Amended Proof of Claim 3, which included a complaint against the Debtor for allegedly receiving fraudulent transfers from C. Thakkar (collectively, the "Claim"). On December 10, 2018, the Claimant again amended the Claim to reduce the amount of the Claim to $9,500,000[7] and reflect the assignment of the Claim from SEG Gateway to Good Gateway. (Cl.'s Ex. 1). The Claim was further amended on June 17, 2019, to include supporting documents for the assignment of the Claim. (Cl.'s Ex. 2).

On May 18, 2018, a Joint Motion to Approve Settlement Agreement Pursuant to Bankruptcy Rule 9019 was filed by the Chapter 7 Trustee, SEG Gateway, and Good Gateway (the "Settlement Agreement").[8] On September 6, 2018, the Court approved the Settlement Agreement.[9] (Docs. 210, 292). Under the Settlement Agreement, the Claim would be allowed as an unsecured claim in the amount of $9,500,000, and upon the Georgia Trustee's liquidation of certain real property located in Georgia (the "Georgia Property"), "the Trustee and SEG agreed that fifty percent (50%) of the sale proceeds will be used to pay down Claim 3 and the

---

[7] The claim was amended pursuant to the Order Granting Joint Motion by Good Gateway, SEG Gateway, and the Chapter 7 Trustee to Approve Settlement Agreement. (Doc. 292).

[8] The Settlement Agreement resolved various claims, adversary proceedings, and appeals. (Doc. 210).

[9] In approving the Settlement Agreement, the Court overruled the Supplemental Objections filed by C. Thakkar and N. Thakkar. (Doc. 292).

other fifty (50%) will be distributed to Nilhan Financial or its equity holders." (Doc. 210, pp. 6-7).

On August 23, 2018, N. Thakkar filed an Amended Objection to Claim 3, and C. Thakkar filed a Notice of Joinder. (Docs. 262, 334). On January 27, 2022, N. Thakkar filed a Second Amended Objection to Proof of Claim Number 3 (the "Amended Claim Objection"), and C. Thakkar again filed a Notice of Joinder. (Docs. 721, 733). Additionally, C. Thakkar filed a Motion to Determine that Good Gateway, LLC's Proof of Claim is Not Entitled to Prima Facie Validity Pursuant to Bankruptcy Rule 3001(f) (the "Motion to Determine"). (Doc. 435). The core argument of the Amended Claim Objection is that the facts do not support a claim based upon reverse veil-piercing, particularly when the Debtor is a limited liability company. (Doc. 721, pp. 2-3).

On March 31, 2021, Judge Williamson entered an Order on the Amended Objection to Claim and the Motion to Determine. (the "Claim Objection Order") (Doc. 627). In the Claim Objection Order, Judge Williamson found that the Florida Supreme Court would permit a veil-piercing claim when there is a familial relationship. Id. at p. 6. Judge Williamson also declined to restrict a familial relationship to a husband and wife and stated that "there is evidence that [C.] Thakkar and his sons treat the Debtor as a family corporation." Id. at p. 7. Additionally, Judge Williamson found that the Claimant was not collaterally estopped from reverse veil-piercing. Id. at pp. 7-9.

Prior to the trial commencing on January 31, 2022, Judge Williamson ruled that the only witnesses permitted to testify at the trial were C. Thakkar and Clay Townsend ("Mr. Townsend"). (Docs. 715, 868, 880). Specifically, Mr. Townsend was "authorized to testify as SEG Gateway and Good Gateway's corporate representative." (Doc. 828). Although Mr.

Townsend testified *solely* as a fact witness for purposes of the trial, he and his law firm have served as counsel to Good Gateway and SEG Gateway since 2010 on a matter brought against C. Thakkar individually, as well as his affiliates and entities, for breaching their fiduciary duties and committing conversion and fraud.  (Doc. 929, Tr. pp. 15-18).  The litigation related to a real estate development project adjacent to the Orlando International Airport and resulted in judgments in excess of fourteen million dollars against C. Thakkar and his various affiliates, not including the Debtor. The Claim relates to these judgments.  Notably, Mr. Townsend testified that his law firm was retained on a base contingency fee of 40%[10] and that he will personally receive 15% to 20% of the fee paid to his firm.  (Doc. 929, Tr. pp. 92-94).

During the trial, C. Thakkar testified extensively, and his testimony demonstrated that he is the brains of the Thakkar entities, including the Debtor.  Notably, Mr. Thakkar previously testified in a deposition that he "was the one who was primarily handling" the monetary transactions of the Debtor and that, in the year prior to filing bankruptcy, his children were the only people besides him who were authorized to handle such transactions.  (Cl.'s Ex. 38, p. 48). Additionally, C. Thakkar testified in the underlying State Court Action that "[a]ll of our entities are the Thakkar's family.  We don't differentiate."  (Cl.'s Ex. 6, p. 39).  Despite Mr. Thakkar's breadth of knowledge and experience as to the Debtor and other Thakkar affiliates and entities, when he was questioned about certain financial transactions his recollection was almost nonexistent.

---

[10] Mr. Townsend testified the firm's contingency rate "[s]tarted at 40[%] and has some additional amounts depending on appeals and bankruptcies."  (Doc. 929, Tr. p. 92).

**Conclusions of Law**

This is a difficult case, which presents many layers of complexity.  The Debtor is a limited liability company, and the sole members as of the petition date were N. Thakkar and his brother R. Thakkar.  The Claimant seeks to hold the Debtor liable for a judgment against C. Thakkar under the theory of reverse veil-piercing.[11]  Ultimately, the Claimant seeks payment of 50% of a $2,344,392.88 distribution that the Debtor was previously awarded from a Chapter 11 bankruptcy case in Georgia.  As a threshold matter, the Court must first determine whether Florida law or Georgia law applies to the analysis of Claim 3.

**A.  Choice of Law - Florida Law Applies**

The choice of law issue is of significant importance in this Case.  Although the standard for reverse veil-piercing in Florida is extremely stringent, the theory is nevertheless allowed under Florida law.  Conversely, neither reverse veil-piercing nor any exception to the bar against it is recognized under Georgia law.  Corrugated Replacements, Inc. v. Johnson, 340 Ga. App. 364, 369 - 70, 797 S.E.2d 238 (2017) (disapproved on other grounds by Reid v. Morris, 309 Ga. 230, 845 S.E.2d 590 (Ga. 2020)); see also In re Webster, 629 B.R. 654, 668 (Bankr. N.D. Ga. 2021) (recognizing that "any prior confusion that existed as to whether Georgia recognizes a claim for reverse veil-piercing has now been resolved by the Georgia appellate courts. Georgia recognizes no such claim nor any exception to the bar against it.").  The Thakkar Parties seek a finding that Georgia law applies because if Georgia law controls, the Claim must be disallowed.  The Court, however, finds that Florida law clearly applies.

Although the Thakkar Parties make some creative arguments as to why Georgia law should apply, the inescapable conclusion based on the evidence is that Florida law applies.  The

---

[11] The Thakkar Parties' argument that the Claimant somehow waived or abandoned its reverse veil-piercing claim when it amended the Claim is without merit and not supported by the record.

Court reaches this conclusion for the following reasons: (i) the Florida Department of State, Division of Corporations, lists the Debtor as a "Florida Limited Liability Company" as of December 17, 2009 (Cl.'s Ex. 49)[12]; (ii) N. Thakkar's Second Amended Objection to Proof of Claim filed by SEG Gateway, LLC, specifically refers to the Debtor as a "Florida Limited Liability Company" (Cl's Ex. 50, p. 2); (iii) the complaint filed by the Debtor against Orlando Gateway Partners, LLC et. al., states in the general allegations: "Nilhan is a Florida limited liability company qualified to do business in the State of Florida" (Cl.'s Ex. 51, p. 1); (iv) in an adversary proceeding brought by Orlando Gateway Partners, LLC, third party defendants, N. Thakkar, R. Thakkar, and Saloni Thakkar[13] referred to the Debtor as a "Florida limited liability company with its principal place of business in Miami-Dade County, Florida" (Cl.'s Ex. 52, p. 2); (v) in the Debtor's answer and affirmative defenses in two separate adversary proceedings it referred to itself as a Florida limited liability company (Cl.'s Exs. 53, 54); (vi) in the Debtor's response to the Motion to Transfer Venue the Debtor states "[b]ecause Nilhan Financial's principal place of business is located in Sunny Isles Beach, Florida, the Bankruptcy Court for the Southern District of Florida was a proper venue for the commencement of the involuntary proceeding against it" (Cl.'s Ex. 55); and (vii) in the Debtor's Answer to Involuntary Petition the Debtor states that its "only significant asset is a promissory note secured by a mortgage on real property owned by Orlando Gateway Partners, LLC," which is located in Florida (Cl.'s Ex. 56).

---

[12] The Division of Corporations lists the Debtor's "Principal Address" as 17885 Collins Avenue, Unit #4001, Sunny Isles Beach, FL 33160.  The sole reference to Georgia is a mailing address of 3985 Steve Reynolds Blvd., L-101, Norcross, Ga. 30093.  (Cl.'s Ex. 49).

[13] Saloni Thakkar is married to C. Thakkar.

Based on the above, the Court finds that the overwhelming weight of the evidence reflects that the Debtor is a Florida limited liability company, to which Florida law applies. For the Court to find otherwise would require legal gymnastics, with at best a tenuous explanation, that would inevitably lead to an erroneous result.

### B. The Law of the Case is that Florida Law Would Recognize a Familial Relationship

The Thakkar Parties argue that the Claimant cannot prevail on its reverse veil-piercing theory because C. Thakkar was not a controlling member of the Debtor. The law of the case provides otherwise. In the Claim Objection Order, Judge Williamson concluded that "the Florida Supreme Court would permit a veil-piercing claim when there is a familial relationship." In re Nilhan Fin., LLC, 627 B.R. 529, 533 (Bankr. M.D. Fla. 2021). In reaching this conclusion, Judge Williamson relied on the Eleventh Circuit's prediction that the Florida Supreme Court would recognize a "familial-relationship" as an exception to the general rule that veil-piercing is only available against a controlling shareholder. Id. at 532-33, (discussing Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1136-39, 1348-49 (11th Cir. 2011) (recognizing how the inherent interest of the familial relationship can benefit "the entire family unit.")). Notably, Judge Williamson also declined to restrict a familial relationship to a husband and wife and stated that "there is evidence that Thakkar and his sons treat the Debtor as a family company." Id. at 533; see also In re Trujillo, 607 B.R. 734, 740 (Bankr. S.D. Fla. 2019) (stating that "[t]here is no factual distinction between the presumed economic benefit and consequent availability of alter ego as a theory of recovery arising from the bonds of family, and the presumed economic benefit arising from actual equitable ownership if so proven."). Therefore, the law of the case dictates that a veil-piercing claim is permitted when there is a familial relationship, which is present in this Case. During the two-day trial, C. Thakkar testified

extensively. As C. Thakkar acknowledged in a deposition, the Debtor functioned as a lending arm for the Thakkar affiliates. (Cl.'s Ex. 38, p. 47). Additionally, C. Thakkar testified that he "was the one who was primarily handling" the monetary transactions of the Debtor and that, in the year prior to the bankruptcy filing, the only people other than him who had the authority to make monetary transactions were his children. Id. at p. 48. As C. Thakkar testified in the underlying state court litigation, "[a]ll of our entities are the Thakkar's family. We don't differentiate." (Cl.'s Ex. 6). Therefore, based on the law of the case, the Claimant's reverse veil-piercing strategy is not defeated solely because C. Thakkar was not a controlling member of the Debtor.

### C. The Extraordinary Relief of Reverse Veil-Piercing is not Supported by the Weight of the Evidence

As previously recognized by Judge Williamson, "[u]nder Florida law, courts are permitted to disregard the corporate form (and pierce the corporate veil) only in the most extraordinary cases." In re Checiek, 492 B.R. 918, 920 (Bankr. M.D. Fla. 2013). In Checiek, Judge Williamson concluded that, based on a review of Florida law governing conventional and reverse veil-piercing, reverse veil-piercing is unavailable "absent evidence that the corporate form was used for a fraudulent or improper purpose." Id. at 921; see also Cargill v. Hedge, 375 N.W.2d 477, 480 (Minn. 1985) (holding that "a reverse pierce should be permitted in only the most carefully limited circumstances."). To successfully pierce the corporate veil the moving party must prove that:

> 1) a corporation is a mere instrumentality of the shareholder, i.e. the shareholder dominated and controlled the corporation to such an extent that it did not have an independent existence and the shareholder was in fact an alter ego of the corporation; 2) the shareholder engaged in improper conduct, i.e. the corporate form was used fraudulently or for an improper purpose; and 3) the fraudulent or improper use of the corporate form caused injury to the claimant.

In re Big Foot Properties, Inc., No. 3:11-BK-6868-JAF, 2012 WL 6892645, at *4 (Bankr. M.D. Fla. May 25, 2012) (citing Priskie v. Missry, 958 So. 2d 613, 614–615 (Fla. 4th DCA 2007)). "Conversely, a corporation may be held liable for the debts of controlling shareholders, a remedy known as reverse corporate piercing, when the shareholders have formed or used the corporation to secrete assets and thereby avoid pre-existing personal liability." Big Foot Properties, 2012 WL 6892645, at *4.

The Thakkar Parties argue that there are two primary flaws to the Claimant's reverse veil-piercing theory. (Doc. 939, p. 7; Doc. 936, p. 5). First, they assert that "no evidence whatsoever has been presented during trial to directly or circumstantially establish that Nilhan was formed for an improper purpose or used after formation to mislead creditors or perpetuate a fraud upon creditors" Id. The second alleged flaw is that Georgia law, which does *not* allow reverse veil-piercing, applies. The Court, however, has already found that Florida law applies. Therefore, the focus of the Court's analysis will be on whether the Debtor was formed or used for a fraudulent or improper purpose.

Although this case presents many complexities, the Court ultimately must weigh the evidence and the testimony presented at trial to reach a determination. As determined by Judge Williamson, the only witnesses permitted to testify at the trial were C. Thakkar and the corporate representative of the Claimant, Mr. Townsend. For various reasons, the Court will only afford *minimal* weight to either witness's testimony. C. Thakkar, by his own testimony, is an extremely accomplished and savvy businessman, who has achieved great financial success over his lifetime. Although C. Thakkar gave leadership designations to his sons, at least in "name," C. Thakkar is undoubtedly the mastermind behind the creation and success of the Debtor and other Thakkar businesses. C. Thakkar's breadth of knowledge and experience as to

the Debtor and other family-owned businesses was at times impressive during his testimony. At other times, especially when it came to questions about various financial transactions of the Debtor, C. Thakkar's recollection was almost nonexistent. Despite the Court's hesitancy, as to which matters C. Thakkar has vivid recall versus other matters in which he has virtually no recall, the Court did find C. Thakkar was genuine during certain portions of his testimony.

Concerning Mr. Townsend, although the Court found him to be very knowledgeable as to the extensive background of events surrounding this matter, his pecuniary interest is notable. Although Mr. Townsend testified solely as a fact witness, and not in his capacity as the Claimant's attorney, the fact remains that Mr. Townsend's law firm was retained on a base contingency fee of 40%, of which he will personally receive 15% to 20% of the fee paid to his firm from the recovery of funds through the litigation. (Doc. 929, Tr. pp. 92-94). This is a substantial amount, considering that under the terms in the Settlement Agreement, the Claimant would be entitled to 50% of 2.3 million dollars.[14] While the Court *does not entirely* disregard Mr. Townsend's testimony, there is a slight appearance of impropriety, which gives the Court pause.[15]

In addition to the above issues with the testimony, the parties' long history of having a contentious relationship is also troubling. Although the Court understands that matters like this are inherently adversarial, this case as repeatedly reflected by the record, obviously became

---

[14] If the Claimant were to prevail, it would receive $1,150,000, which is 50% of the approximately $2,300,000 claim that the Debtor was awarded from the Nilhan Developer's bankruptcy estate. Therefore, Mr. Townsend's firm would receive a minimum fee of $460,000, of which Mr. Townsend would individually receive between $69,000 and $92,000.

[15] Notably, Claimant's counsel acknowledged that Mr. Townsend "is not particularly relevant," and that his testimony "was only to establish the amount of the debt."" (Doc. 932, Tr. p. 257).

personal between C. Thakkar and Mr. Townsend a long time ago.[16]  For these reasons and reasons previously stated, the Court finds that C. Thakkar and Mr. Townsend's testimony is plagued with credibility concerns.  Therefore, the Court will only afford *minimal* weight to their testimony and will give the most consideration and weight to the documentary evidence presented.

Piercing the corporate veil is an extraordinary remedy, and the theory of reverse veil-piercing is an even more extreme remedy.  The harsh nature of the theory is illustrated by the fact that settled case law in Georgia plainly holds that reverse veil-piercing is not a remedy that is recognized under the laws of Georgia.  Johnson, 340 Ga. App. at 369-70.  While the theory is recognized in Florida, it is preserved solely for *extraordinary* cases.  The evidence presented, however, does not support a finding that this case qualifies as extraordinary for the purpose of reverse veil-piercing.

First, as acknowledged by the Claimant's attorney, the Debtor was *not* formed for an improper purpose.  (Doc. 932, Tr. p. 249).  As C. Thakkar testified, the Debtor's business "was set up with the intent of the money that was borrowed from Wells Fargo then would be re-lent to single-asset entities that would buy property and [the Debtor] would finance the acquisition of the properties."  Id. at p. 228.  Therefore, the question before the Court is whether at some juncture the Debtor ceased operating for a proper purpose and was dominated by C. Thakkar to the extent that it lost its corporate existence.

The Claimant's theory is that business "went bad in a hurry" for C. Thakkar, with multi-million-dollar judgments being entered against him and two of his entities.  (Doc. 932, Tr. p.

---

[16] Although the parties showed more decorum throughout the course of this trial than what the record reflects from previous hearings, hostilities still simmered, and the Court had to redirect and issue multiple warnings to C. Thakkar and Mr. Townsend.

250).  Wells Fargo then ceased lending and defaulted loans held by the Thakkar entities.  This led to foreclosures on real properties in Georgia, and eventually to the bankruptcy filings of various Thakkar entities and affiliates in Georgia.  Id.  During closing arguments, Claimant's counsel summarized its theory by stating:

> So this entity set up to be a lender, that was for a little bit, then became used for an improper purpose. And the purpose was to move money in and out of some source, and to benefit him and his family, and hinder legitimate collection efforts, and while not paying creditors who ultimately, after appeal, were found to have valid claims, in excess of a million dollars. We think that rises to that.

> While we don't have, you know, a statement by him, an email saying, boy, I am sure putting one over, I'm going to use this entity for a criminal enterprise, I think the silence and the inability to explain, along with having no tax documents, no financial records, shows you that Nilhan Financial ceased being a business. It just became a way to move money from one column to the other, and we know it benefitted them. Id. at 257.

Conversely, C. Thakkar and N. Thakkar maintain that despite the Claimant having years to take discovery, issue numerous subpoenas, and review bank records, essentially their evidence *directly* traceable to C. Thakkar operating the business for an improper purpose "is a few line items in 2016, very few over $5,000" which personally go to C. Thakkar.  Based on the lack of direct evidence, N. Thakkar's counsel stated in his closing argument that "the allegations that there's some kind of shell game being played here is more argument than it is proof, and more supposition than it is fact."  (Doc. 932, Tr. p. 264).  Upon reviewing the evidence, or lack thereof, the Court agrees.

The core evidence involves eight U.S. Trust bank statements (the "Bank Statements") and two American Express credit card statements.  (Cl.'s Exs. 28-37).  Seven of the Bank Statements are consecutively dated from January 1, 2016 to July 31, 2016, as well as an additional statement dated January 1, 2017 to January 31, 2017.  Ultimately, the Court must determine the "lens" under which the transactions should be viewed.  The Claimant wants the

Court to focus on C. Thakkar's purported lack of knowledge as to certain financial transactions, coupled with the allegation "that the source of the money is either Chuck Thakkar, or a company, owned by his family members but controlled by Chuck Thakkar." (Doc. 937, p. 15). This includes a transfer into the Debtor's bank account on January 10, 2017, for $339,780 with the notation "Originate Nilhan Financial 401(k) PSP" and a transfer out the same day to checking account 3536 for $342,000.[17] (Cl.'s Ex. 35, Doc. 929, Tr. pp. 214-16). Additional examples highlighted by the Claimant are C. Thakkar's lack of knowledge as to the following transactions: (i) a payment of $41,000 received by Community Bank; (ii) a payment of $100,000 received by Wells Fargo; (iii) a transfer of $105,000 was transferred to American Express on behalf of Niloy Thakkar; (iv) a transfer of $206,695 was transferred to Manufacturers & Traders Bank, and (v) transfers to Sunny Isles Residential. (Cl.'s Ex. 38, Doc. 937, p. 15). Conversely, C. Thakkar argues that the Claimants were not able to point to much more than a handful of transactions for more than $5,000 that went *solely* to him personally.

The Court has spent an extensive amount of time considering this issue. Certainly, there are a lot of question marks surrounding the $4 million in deposits and $4 million in withdrawals in 2016 that went into and out of the Debtor.[18] However, there is not sufficient evidence to connect the questions surrounding these financial transactions *directly* to C. Thakkar.

Although the Court finds that the Debtor is not subject to reverse veil-piercing, the decision is *not* to be construed as the Court condoning some of the questionable behavior C. Thakkar engaged in and the decisions he made. The Court's decision primarily hinges on the

---

[17] C. Thakkar testified that he had "no knowledge" of the Debtor having a 401(k). (Doc. 929, Tr. p. 214).

[18] At the hearing, the Claimant's attorney questioned C. Thakkar about a deposit originating from Nilhan Financial 401K PSP on June 30, 2016, in the amount of $339,680, as well as a transfer out later that day to Taylor Law Offices for $325,000. (Doc. 929, Tr. pp. 227-28). The Court notes that there is a notation on the $325,000 wire transfer out that states, "Funding for New Buildings at Sugarloaf." (Cl.'s Ex. 33).

*extremely* high bar required to prevail on a claim for reverse veil-piercing. While not insurmountable, *copious* evidence is required to succeed. As recognized by the Claimant's attorney, proving that the Debtor was being used for an improper purpose is a "high level," and his client does not "get to win by supposition." (Doc. 932, pp. 254, 257). Without question, there is a lot of "smoke" surrounding the Debtor's monetary transactions in 2016. However, there is more supposition than evidence produced by the Claimant which *directly* shows that C. Thakkar used the Debtor for an improper purpose. While the Court commends Claimant's counsel for putting together a solid case with the available evidence, it is not enough to convince the Court that the case rises to the extraordinary level needed to invoke the harsh and rarely used theory of reverse veil-piercing.

## Conclusion

This portion of the saga that has unfolded in this Case has finally reached its conclusion. As stated by Judge Williamson in the Claim Objection Order, the Claimant bears "the burden of producing evidence of the validity of its claim, as well as the ultimate burden of proving its claim by a preponderance of the evidence." Nilhan Fin., 627 B.R. at 535. The Claimant, however, failed to prove its claim by a preponderance of the evidence.

For the reasons stated above, the Court finds: (i) Florida law, not Georgia law, is the choice of law applicable to the Claim; (ii) the "law of the case" provides that Florida law would recognize a familial relationship and that such a relationship is present in the Case; and (iii) the evidence falls short of the high burden necessary for the Court to utilize the extreme remedy of reverse veil-piercing.[19] Therefore, the Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law and sustain the Amended Objection to Claim.

---

[19] To the extent the Court did not address some of the parties' ancillary arguments, the Court finds those matters to either be moot or not necessary to the Court's determination.

Attorney Edmund S. Whitson, III is directed to serve a copy of this order on all interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.